IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

UNITED STATES OF AMERICA,

        Plaintiff-Respondent,

v.                                     No. CIV 02-767 MV/LFG
                                       No. CRIM 98-632 MV

RUBEN LUNA,

        Defendant-Movant.

**MEMORANDUM OPINION AND ORDER
SETTING EVIDENTIARY HEARING**

THIS MATTER is before the Court on Ruben Luna's ("Luna's") motion, brought under 28 U.S.C. § 2255, to vacate, set aside or correct his sentence [doc. 1], filed June 28, 2002. Luna seeks an evidentiary hearing on his claims that trial counsel was ineffective. Alternatively, he requests a new trial. [Doc. 3, at 15.] On August 1, 2002, the government filed a response opposing Luna's motion and requesting dismissal of the matter. [Doc. 9.] However, the government also stated that "[a]lternatively, the court should appoint an attorney to represent Luna and conduct an evidentiary hearing on the quality of lawyering provided by [trial counsel] Mr. Woolston." [Doc. 9, at 21.] After careful consideration of the pertinent law and all pleadings submitted by the parties, including attachments, appendices and portions of the underlying criminal record, the Court concludes that an evidentiary hearing should be set in this matter and that counsel for Luna will be appointed.

**Background**

On June 3, 1999, a jury returned a guilty verdict on three counts against Luna – conspiracy to possess more than 500 grams of cocaine with intent to distribute, possession of more than 500 grams of cocaine with intent to distribute, and carrying a firearm in connection with a drug offense. [Order and Judgment, filed June 28, 2001, Ex. A1 to doc. 4.]  He was sentenced to 12 ½ years of imprisonment.  [Id.]  Luna is currently incarcerated at the Federal Prison Camp in Florence, Colorado.

Luna's federal habeas petition raises four separate Sixth Amendment ineffective assistance of counsel claims in relation to his trial counsel's representation of him.  He asserts that trial attorney Timothy Woolston ("Woolston")[1] failed to explain the risks and benefits of the government's first plea offer and to communicate a second plea offer that was allegedly offered by the government.  In addition, Luna contends that Woolston's representation of him was constitutionally defective because of Woolston's lack of pre-trial preparation and failure to provide a continuous interpreter for Luna, whose primary language is Spanish.  He further asserts that Woolston's failure to file a motion for new trial and his overall inadequate representation of Luna violated his Sixth Amendment right to effective counsel.  [Doc. 1.]

The government responds that none of Luna's claims have merit.  First, there was only one plea offer made to Luna which the government believes Luna rejected because he had decided to take his chances with a jury.  Second, Luna identified no specific trial preparation that Woolston should have conducted.  Third, Luna did not provide any legitimate grounds to support a motion for new trial.  Further, to the extent that a new trial motion would have relied only on ineffective assistance

---

[1]Woolston was retained to represent Luna by Luna's family and/or friends.

of counsel claims, it would have been baseless.  Fourth, Luna's claim that Woolston's overall representation was inadequate is insufficiently specific.  Overall, the government argues that Luna failed to show any prejudice or that the outcome of the jury trial would have been different, but for counsel's alleged unprofessional errors.

The government did not address Luna's allegation that he was not provided with a "continuous interpreter," other than to say it was not privy to conversations or meetings between Woolston and Luna.  The government provides no discussion of whether Luna did or did not appear to understand English, or at what points he was provided with an interpreter during court proceedings.

The government does state, however, that counsel spoke to Woolston about Luna's contentions and that Woolston had no recollection of the Luna trial, had no records related to his representation of Luna, and did not remember the name of Ruben Luna.  The government further acknowledges that the trial judge, The Honorable Martha Vazquez, expressed concern during the sentencing proceedings that Luna had not received effective assistance of counsel during the trial and pre-trial proceedings.  The government concedes that based on the trial judge's comments and the fact that Woolston could not recall the case, this Court may, in its discretion, schedule an evidentiary hearing.  [Doc. 9, at 20-21.]

### Factual and Procedural Summary

Luna's conviction related to an undercover narcotics operation.  In August 1998, undercover Officer Mendez contacted Arturo Gandarilla in an attempt to purchase marijuana.  Gandarilla supposedly was unable to supply Officer Mendez with marijuana but offered the possibility of cocaine from his supplier.  Officer Mendez and Gandarilla met at a bar, and Roberto Gomez, the supplier,

then arrived.  Gomez gave Officer Mendez a sample of the cocaine, and Officer Mendez along with

Officer Mora showed them the money.  Gomez wished to complete the transaction elsewhere because

of a number of people outside the bar.  They drove to a new location where El Bronco, a mobile food

stand, was located.  A short while later, a pickup truck driven by Luna arrived.  Either Gandarilla or

Gomez, speaking in Spanish referred to the driver as "El Bueno" and told Mendez that this was the

supplier.  One of them also said "Ya se iso."  Mendez testified that this meant "this is done" and

indicated to him that "it's going to happen."

Luna got out of his pickup carrying a white box which he handed to Gomez.  Gomez placed

the box on the floorboard of his truck and closed the door.  Gomez then turned to Mendez and said

something to the effect of let's get this done.  Gomez opened the truck door and opened the box

revealing two bags that turned out to contain 2 kilograms of cocaine.  The three men then were

arrested and all three indicted.  Luna had a loaded 9-millimeter pistol concealed in the front waistband

of his pants.  [Ex. A2-4, attached to Doc. 5.]

Gomez pleaded guilty to a conspiracy charge in the indictment and received a sentence of 30

months. [Ex. B6, attached to Doc. 5.]  On May 11, 1999, a jury trial began with respect to Luna and

co-Defendant Gandarilla.  On May 13, 1999, a mistrial was declared after the prosecution mentioned

during its examination of Gandarilla that Gandarilla had been in custody since arrest.  On June 1,

1999, Gandarilla entered a guilty plea to the conspiracy charge and received a sentence of 30 months.

Later on June 1, 1999, a jury was selected for the second jury trial in which Luna was the sole

Defendant.  The second trial proceeded on June 2 and 3.  Both Gomez and Gandarilla testified on

behalf of Luna at the second trial.  Gomez claimed that Luna was not involved in the cocaine sale and

that Luna had handed Gomez a box with six or seven compact discs previously loaned to Luna by

Gomez.  Gomez testified that Gomez removed the CDs from the box and replaced them with the cocaine that Gomez had concealed in his back seat.  Gomez also provided testimony detailing how he obtained the cocaine from another supplier earlier that evening.  Gomez testified that when he was looking for the other supplier, he ran into Luna who told him he wished to return the CDs to Gomez.  According to Gomez, Luna later came by El Bronco to return the CDs.

Gandarilla also testified for Luna.  He stated that Gomez told him during their drive to El Branco that he (Gomez) had the cocaine with him.  Gandarilla testified that he saw "two, two things behind the seat."  There was evidence presented at trial that it would have been difficult based on Officer Mendez's location and timing for Gomez to have switched the contents of the white box after Luna gave it to him.  [Ex. A7-A8, attached to Doc. 5.]

On June 3, 1999, a jury rejected Gomez's and Gandarilla's evidence and convicted Luna.  Woolston did not file a motion for new trial, and according to Luna, Woolston did not discuss the possibilities of filing any post-trial motions. Luna also claims he was unaware of the date of the second trial until he was rushed to the courthouse on that day, was not provided any interpreter from the time of the mistrial until the start of the second trial, and had no way to ask questions, convey objections or communicate with Woolston during the second trial.

On July 30, 1999, Woolston requested to withdraw as counsel of record for Luna and his request was granted on August 4, 1999.  Mark Robert was appointed as new counsel for Luna on August 6, 1999.  On October 29, 1999, through Attorney Robert, Luna moved for a new trial and for leave to file the motion out of time, but his requests were denied.  On November 29, 1999, he was sentenced.  On January 7, 2000, he filed a timely notice of appeal.  On June 23, 2001, the Tenth Circuit affirmed his conviction.

5

During sentencing Attorney Robert argued that Luna had not received a "fair shake" because of the "nature of his representation during trial." Judge Vazquez noted that she did not know how to assess Luna's role based on the testimony at trial. She opined that Woolston's representation of Luna was "below the standard," but that by the time any motion was filed she had lost jurisdiction. The Court further commented that Woolston did not appear to have the facts or names of people straight at trial and that his presentation created "total confusion." Finally, Judge Vazquez stated that she was concerned that Woolston did not have the kind of relationship with Luna where Woolston would have explained the possible sentence Luna was facing. At the conclusion of the sentencing hearing, the prosecuting attorney explained that the government had made only one offer to Luna and that offer was not less than 10 years of imprisonment.

## Evidentiary Hearing

An evidentiary hearing must be held on a § 2255 motion "unless the motion and files and records of the case conclusively show that the prisoner is entitled to no relief." 28 U.S.C. § 2255; United States v. Lopez, 100 F.3d 113, 119 (10th Cir. 1996); United States v. Galloway, 56 F.3d 1239, 1240 n. 1 (10th Cir. 1995). Before an evidentiary hearing is granted, the movant must allege facts, that if proven, would entitle him to relief. *See* Hatch v. Oklahoma, 58 F.3d 1447, 1471 (10th Cir. 1995), *cert. denied*, 517 U.S. 1235 (1996). General or conclusory facts are insufficient to demonstrate the need for hearing. However, when disputed material facts are put in issue through affidavits, an evidentiary hearing is required. *See* Moore v. United States, 950 F.2d 656, 661 (10th Cir. 1991) (hearing necessary when factual disputes and inconsistencies beyond the record exist). For the reasons set out below, the Court concludes that it must provide an evidentiary hearing under the facts of this case.

**Analysis**

Both parties agree that ineffective assistance of counsel claims are analyzed under Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052 (1984). To satisfy the Strickland requirements, the movant must prove that trial counsel "made errors so serious that counsel was not functioning as the 'counsel' guaranteed by the Sixth Amendment." Id. Second, the movant must show that trial counsel's deficient performance prejudiced him to the degree that he was deprived of a fair trial. Id.

In Strickland, the United States Supreme Court emphasized that judicial scrutiny of counsel's performance must be highly deferential. A court should not second-guess counsel's representation after an adverse verdict or sentence. An attorney's performance should be evaluated from counsel's perspective at the pertinent time, thereby eliminating any distorting effects of hindsight. A court must indulge a strong presumption that counsel's conduct was reasonable and could have been considered sound trial strategy. Id. at 689, 104 S.Ct. 2052. To demonstrate prejudice, the movant must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."

An attorney's failure to procure an interpreter can constitute evidence that the attorney's conduct fell outside the range of professionally competent assistance. Gonzalez v. Phillips, 195 F. Supp. 2d 893, 897, 899 (E.D.Mich. 2001).

> In order to receive a fair trial and to assist in his own defense, a defendant must be able to understand the proceedings against him. If a defendant does not understand those proceedings and the defendant's attorney is aware or should be aware of the defendant's inability to understand the proceedings, it is incumbent upon that attorney to act on his . . . client's behalf by requesting an interpreter.

Id. at 899. In addition, the failure to provide an interpreter so that the defendant understood the proceedings and was able to assist in his own defense may demonstrate prejudice. Id. at 901. Indeed,

where a defendant cannot communicate with his counsel in a shared language, a meaningful attorney-client relationship could not occur during trial as guaranteed by the Sixth Amendment.  The Gonzalez Court viewed such circumstances to be so likely to prejudice the accused that a presumption of prejudice applied.  Id. at 902.

Luna provided affidavit testimony [doc. 2], regarding his claim that Woolston was ineffective for failing to ensure that Luna had an interpreter during various parts of the proceedings and pre-trial or post-trial communications with him.  Luna was born in the United States, his family moved to Mexico when he was a small child, and they remained there for most of his life.  He received his education in Mexico and his primary language is Spanish.  He received the equivalent of about a Seventh Grade Education in Mexico.   He does not speak, read, write, or understand English. According to Luna, Woolston was informed that Luna did not understand English when Woolston was retained and that Luna had to be provided with an interpreter at all times.  Luna's family and friends paid an extra fee to Woolston designated for purposes of acquiring the services of an interpreter.  None of this affidavit testimony is controverted, particularly in view of the fact that Woolston did not remember Luna's name and had no records to supply the government with respect to his representation of Luna.

Regarding plea discussions, Luna testified that Woolston, through an interpreter provided by Woolston, informed Luna that the government had made a verbal plea offer of five years, with the gun charge dropped.  However, Woolston informed Luna that if he proceeded to trial, he faced no more than an 8 year sentence.  Luna contends that he and the interpreter had difficulty understanding each other.  Luna also asserts that he never did fully understand what was going on during the course

8

of Woolston's representation of him because of a lack of continuous communication.  He further claims he never received any written plea offers provided by the government.

Luna, through an inmate, had one conversation with Woolston between the mistrial and the first day of the second trial.  Luna understood through the inmate's translations that Woolston said that the government had made a big mistake at the first trial and that Luna had a 99% chance of winning his case and being released soon.

While Luna apparently agrees that there was a court-appointed interpreter at the second trial, he states that Woolston told him on June 1 (through an interpreter) that he did not want Luna to testify[2] because Woolston did not like the new Court interpreter.  Luna also claims that he was never advised how he could communicate with Woolston during the second trial, implying that there was no interpreter with Luna at counsel's table.  Luna identified several problems with testimony given during the trial that he would have discussed with Woolston if he had been able to communicate with him.  Again, little if any of this testimony by Luna is contradicted by the government, with the exception that the government claims that it made no offers to Luna of less than 10 years imprisonment.  Still, Luna argues that he understood such an offer was made, at least through the translation of an interpreter with whom he had difficulty understanding.

Based on the pertinent law, along with Luna's affidavit and the fact that the government was unable to provide any evidence from Luna's trial counsel to contradict Luna's testimony, the Court concludes that motions and file and record of this case do not conclusively demonstrate that Luna is entitled to no relief.  Thus, because there are disputed facts and inconsistencies beyond the record, the Court will grant Luna's request for an evidentiary hearing.

---

[2]Luna testified at the first trial.

9

At the hearing, the parties should be prepared to address the following questions: (1) whether Woolston provided Luna with an interpreter during trial proceedings, including pre- and post-trial communications with Luna, and how any failure to have an interpreter harmed his case; (2) whether any failure to provide the services of an interpreter prevented Luna from intelligently and adequately participating in his defense; and (3) whether Woolston was ineffective during plea negotiations, pre-trial preparation, trial or in failing to file any post-trial motions.

In addition, evidence should be presented on the following points:   (1) Luna's understanding or lack of understanding of English during judicial proceedings and in conferences with his counsel; (2) communications between Luna and Woolston about the need for an interpreter; (3) any conclusions that Woolston reached that Luna did not need an interpreter; (4) whether Luna communicated to Woolston in any manner during the second trial that he was unable to understand the proceedings or to raise questions related to his defense due to not having an interpreter; (5) any notice that Woolston had of Luna's need for and payment for an interpreter; (6) written or verbal plea offers conveyed to Luna by Woolston; (7) what determinations Woolston reached regarding the question of whether to file any post-trial motions.

## Conclusion

Based on the foregoing discussion, the Court concludes that an evidentiary hearing should be set in this matter.  Under 28 U.S.C. § 2255, when a request for evidentiary hearing is granted, the Court should set that hearing promptly.  However, because of the possible complexity of issues involving claims of ineffective assistance of counsel and the importance of a habeas hearing, the Court must provide counsel with adequate time to prepare.  Thus, the hearing will be set for Friday, March

21, 2003 at 9 a.m.  In addition, the Court grants Luna's request that Marc Robert be appointed counsel and also grants his request for the services of an interpreter.

      IT IS THEREFORE ORDERED that:

(1)    Luna's request for an evidentiary hearing is GRANTED, and that the hearing is scheduled on March 21, 2003 at 9 a.m.;

(2)    Luna's request for Attorney Marc Robert to be appointed counsel is GRANTED; and

(3)    Luna's request for the services of an interpreter is GRANTED.

Lorenzo F. Garcia
United States Magistrate Judge